# United States Bankruptcy Court
## District of Massachusetts

|  |  |
|---|---|
| In re: | ) |
|  | ) |
| CHRISTINE H. LAZARUS, | ) |
|  | ) Chapter 7 |
| Debtor. | ) Case No. 04-45477-HJB |
|  | ) |
| JOSEPH B. COLLINS, | ) |
| Chapter 7 Trustee, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) Adversary Proceeding |
|  | ) No. 05-04007 |
| GREATER ATLANTIC MORTGAGE | ) |
| CORPORATION and | ) |
| MORTGAGE ELECTRONIC | ) |
| REGISTRATION SYSTEMS, INC., | ) |
|  | ) |
| Defendants. | ) |

## MEMORANDUM OF DECISION

Before this Court are cross motions for summary judgment. The parties directly involved are Greater Atlantic Mortgage Corporation ("Greater Atlantic" or "Defendant") and the Chapter 7 Trustee, Joseph B. Collins ("Trustee" or "Plaintiff"); indirectly, though significantly, affected is the debtor, Christine H. Lazarus ("Debtor"). The central issue is whether a mortgage, granted to secure a loan used to pay off a prior mortgage, may be avoided under § 547 of the Bankruptcy Code[1] as a preferential transfer, where the later

---

[1] Unless otherwise stated, all statutory references are to Title 11 of the United States Code, §§ 101 *et seq.* (the "Bankruptcy Code" or the "Code").

mortgage is recorded within ninety (90) days of the filing of a bankruptcy petition and more than ten days after the obligation on the prior mortgage has been paid. Of particular relevance is the common law "earmarking doctrine" and the "contemporaneous exchange exception" provided under § 547(c)(1) of the Bankruptcy Code.

## I.    FACTS & TRAVEL OF THE CASE

The material facts are not disputed. On September 29, 2004 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code. The Debtor's Schedules disclose her interest in property located at 65-67 Joseph Street, Springfield, Massachusetts (the "Property") as a joint tenant with her sister (jointly the "Sisters"). The Debtor represented the value of the Property to be $110,000, subject to a mortgage held by Greater Atlantic in the amount of $96,319. The remaining equity of $13,681 was claimed as exempt. Of interest here is how Greater Atlantic obtained and recorded its mortgage.

The Sisters purchased the Property on August 17, 2001 with the benefit of a loan from Washington Mutual Bank ("Washington Mutual"), secured by a mortgage on the Property. Several years later, they decided to pay off their debt to Washington Mutual and refinance the mortgage with Greater Atlantic.[2] The loan with Greater Atlantic closed on June 22, 2004, at which time the Sisters executed a note in the amount of $96,319 (the "Note") and a mortgage on the Property in favor of Greater Atlantic (the "Greater Atlantic

_____

[2] The loan application was actually delivered to Mortgage Electronic Registration Systems, Inc., which acted as an agent for Greater Atlantic throughout the refinancing process, but for purposes of this opinion the two entities are singularly referred to as either the "Defendant" or "Greater Atlantic."

Mortgage").   On July 1, 2004, the proceeds from the Note were disbursed (the

"Disbursement") by Greater Atlantic to Washington Mutual in full satisfaction of the Sisters'

obligation under the original mortgage loan.

Two weeks after the Disbursement, on July 15, 2004, the Greater Atlantic Mortgage

was recorded in the Hampden County Registry of Deeds (the "Recording").   Later still, on

August, 3, 2004, the discharge of Washington Mutual's mortgage on the Property was

recorded.   Both the Disbursement and the Recording took place within 90 days of the

Petition Date. There is no dispute that the Debtor was insolvent at all relevant times.


## II.    POSITIONS OF THE PARTIES

The Trustee contends that the Recording of the Greater Atlantic Mortgage, which

perfected that security interest, constituted a preferential transfer of an interest in the

Property to Greater Atlantic,[3] avoidable under § 547(b).   Section 547(b) provides:

> Except as provided in subsection (c) of this section, the trustee may avoid
> any transfer of an interest of the debtor in property —
>
> > (1) to or for the benefit of a creditor;
> > (2) for or on account of an antecedent debt owed by the debtor
> > before such transfer was made;
> > (3) made while the debtor was insolvent;
> > (4) made —
> > > (A) on or within 90 days before the date of the filing of
> > > the petition; or
> > > (B) between 90 days and one year before the date of
> > > the filing of the petition, if such creditor at the time of
> > > such transfer was an insider; and

---

[3] The Code defines "transfer" as "every mode, direct or indirect, absolute or unconditional, voluntary or involuntary, of disposing of or parting with an interest in property, *including retention of title as a security interest.*"   11 U.S.C. § 101(54) (emphasis supplied).

(5) that enables such creditor to receive more than such
creditor would receive if —
    (A) the case were a case under chapter 7 of this
title;
    (B) the transfer had not been made; and
    (C) such creditor received payment of such debt to the extent
provided by the provisions of this title.

11 U.S.C. § 547(b).

The Trustee maintains that each of the five enumerated elements listed in § 547(b)
are satisfied here.  He contends that: (i)  the perfection of the security interest represented
by the Greater Atlantic Mortgage was a transfer of an interest in the Debtor's Property for
the benefit of Greater Atlantic; (ii) the transfer was made on account of an antecedent debt,
which was the liability incurred by the Debtor on either June 22, 2004 (upon executing the
Note and the Greater Atlantic Mortgage) or July 1, 2004 (when the funds were disbursed)[4];
(iii) the Debtor was insolvent at the time of the transfer, both presumptively under § 547(f)
and actually, based on the information set forth in her Petition; (iv) the transfer represented
by the recording of the Greater Atlantic Mortgage was within 90 days of the Petition Date;
and (v) Greater Atlantic will receive more on account of the Greater Atlantic Mortgage than
it would as a general unsecured creditor, without the benefit of the Greater Atlantic
Mortgage, in the Debtor's Chapter 7 case.

In the event that the Greater Atlantic Mortgage is avoided, the Trustee urges this
Court to award a monetary judgment against Greater Atlantic equal to the value of the

---

[4] The Parties appear unsure as to which event should be used in determining when the
transfer was made to Greater Atlantic.  The distinction is immaterial in light of the Court's
holding below.

Greater Atlantic Mortgage, rather than a judgment avoiding or requiring a turnover of the mortgage itself.  Section 550(a) of the Bankruptcy Code states, in relevant part:

> [T]o the extent that a transfer is avoided under section. . . 547. . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, *or, if the court so orders, the value of such property*, from –
>
>> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made. . .

11 U.S.C. § 550(a) (emphasis supplied).  Quoting this Court in  Aero-Fastener, Inc. v. Sierracin Corp. (In re Aero-Fastener, Inc.), 177 B.R. 120, 139 (Bankr. D. Mass. 1994), the Trustee asserts that "courts will generally permit the recovery of value if the value is readily determinable and a monetary award would work a savings to the estate."  Greater Atlantic has stipulated that the current value of the Mortgage is $96,313, which the Trustee contends is a readily determinable value that satisfies the first prong of the Aero-Fastener test.

The Trustee maintains that a monetary judgment would also result in a savings to the estate, thus satisfying the second prong of the   Aero-Fastener test.  The Trustee worries that, should this Court avoid Greater Atlantic's Mortgage, the Trustee would be compelled to foreclose on or sell the Property, pursuant to §551, unless the Debtor succeeded in generating funds from another refinancing. [5]  Neither of these alternatives appears attractive to the Trustee.  He worries that the net recovery from a sale of the

---

[5] Section 551 states:

Any transfer avoided under section . . . 547 . . . of this title . . . is preserved for the benefit of the estate but only with respect to property of the estate.

11 U.S.C. § 551.

Property might not yield full value for the estate and, further, that "in light of the pendency of the Debtor's Bankruptcy Case, it may be impossible [for her] to obtain [] financing."

Greater Atlantic argues that § 547(b) does not apply because there was no transfer of an interest of the Debtor in property and, alternatively, that the "contemporaneous exchange" exception under § 547(c)(1) is an applicable affirmative defense that bars the avoidance of the Greater Atlantic Mortgage by the Trustee.

As to its first argument, Greater Atlantic contends that § 547(b) cannot be invoked because under the "earmarking doctrine" there was no transfer of the Debtor's interest in the Property. The earmarking doctrine addresses the preliminary requirement, under § 547(b), that there be a "transfer of an interest of the debtor in property." If there is no such transfer, then there is no need for further analysis under § 547(b). Greater Atlantic explains that if a new creditor's funds are earmarked to pay off an existing obligation, the transfer "simply results in a new debt replacing an old debt, and the fund[s] available for [the] debtor's general creditors remain[] unchanged." Greater Atlantic asserts that the earmarking doctrine fittingly applies to mortgages which are being refinanced. It reasons that its security interest simply replaced that of Washington Mutual, such that there was no diminution of the estate as it "merely step[ped] into the shoes of [the] old creditor." See, Kaler v. Cmty. First Nat'l Bank (In re Heitkamp), 137 F.3d 1087, 1089 (8th Cir. 1998).

The Trustee responds that the earmarking doctrine applies to the transfer of funds between and an old and new creditor, but not to the transfer of the security interest from the debtor to the new creditor. He argues that the Bankruptcy Code makes a distinction between the disbursement of funds and the perfection of a security interest, as evidenced

-6-

by the ten-day grace period provided by § 547(e)(2).[6]  The Trustee would have this Court follow <u>Messamore v. Anna Nat'l Bank (In re Messamore)</u>, 250 B.R. 913 (Bankr. S.D. Ill. 2000), which holds that refinancing a mortgage involves two separate transfers - the disbursement of funds to the old creditor and the perfection of the new creditor's security interest - and that the earmarking doctrine applies only to the former.  Greater Atlantic counters that "[a] refinancing is a single transaction that should not be dissected into several individual transfers."  Greater Atlantic further argues on policy grounds that "[r]efinancing is a beneficial transaction that can help a debtor stave off bankruptcy by reducing monthly payments; it should not be discouraged on [  *sic*] a narrow technical application of the [B]ankruptcy [C]ode."

Alternatively, Greater Atlantic maintains that the "contemporaneous exchange" exception under §547(c) applies:

> The trustee may not avoid under this section a transfer –
>
>> (1) to the extent that such transfer was–
>>
>>> (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
>>> (B) in fact a substantially contemporaneous exchange.

---

[6] Section 547(e)(2) provides, in relevant part:

> For the purposes of this section . . . a transfer is made –
>> (A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time . . . [or]
>> (B) at the time such transfer is perfected, if such transfer is perfected after such 10 days. . .

11 U.S.C. § 547(e)(2)(A), (B).

11 U.S.C. § 547(c)(1).   Greater Atlantic contends that its transaction with the Debtor satisfies the three elements required to establish a contemporaneous exchange defense. Those elements are that (1) new value is extended to a debtor, (2) it was the intent of the debtor and the creditor extending the value that the exchange be contemporaneous; and (3) the  exchange was, in fact, substantially contemporaneous.   Shreves v. Valley Nat'l Bank (In re Shreves), 272 B.R. 614, 618 (Bankr. N.D. W. Va. 2001).   Greater Atlantic submits that the funds disbursed to Washington Mutual constituted new value extended to the Debtor because those funds satisfied her obligation under the first mortgage; it was the mutual intent of the parties that the exchange be contemporaneous; and the fourteen-day lapse between the Disbursement and the Recording was, in fact, "substantially" contemporaneous.[7]

Greater Atlantic notes that several courts have interpreted the statutory adverb "substantially" to afford greater flexibility than the ten-day grace period available under § 547(e), and that those courts have considered in their analyses the length of the delay, the reason for delay, the nature of the transaction, the intention of the parties, and the possible risk of fraud. See, e.g., Pine Top Ins. Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 969 F.2d 321, 328 (7th Cir. 1992).   Greater Atlantic insists that its delay was reasonable, fourteen or twenty-three days at most; the parties intended contemporaneity; it took "immediate and reasonable steps to perfect the new mortgage;"[8] and "there was no hint

---

[7] Alternatively, in anticipation of an argument that the Greater Atlantic Mortgage became effective between the parties when it was executed on June 22, 2004, Greater Atlantic contends that the 23-day lapse between that date and the Recording, on July 15, 2004, is also substantially contemporaneous.

[8] Greater Atlantic alleges that it initiated the perfection process on the date of the Disbursement by mailing the Greater Atlantic Mortgage, together with the appropriate filing fees,

of fraudulent intent." Greater Atlantic contends that, under a flexible contemporaneous exchange analysis, it satisfies its burden of proving the applicability of the exception to its delayed perfection of the Greater Atlantic Mortgage and, accordingly, that the Trustee may not avoid its security interest.

The Trustee responds by urging this Court to employ the strict approach to the contemporaneous exchange exception, as espoused by the court in <u>Ray v. Sec. Mut. Fin. Corp. et. al. (In re Arnett)</u>, 731 F.2d 358, 364 (6th Cir. 1984). That court narrowly defined "substantially contemporaneous," in the context of a refinancing arrangement, as a maximum of ten days in conformity with the § 547(e)(2)(A) grace period. The Trustee asserts that because the Recording did not occur within ten days of the Disbursement, the two events were not "substantially contemporaneous."

The Trustee, quoting <u>Arnett</u>, further directs the Court to the legislative history surrounding § 547, which reflects the intention by Congress to "discourage the creation of 'secret liens.'" 731 F.2d at 363. He states that "[i]n light of the language of the Code and the public policy underlying § 547, <u>Arnett</u> recognized that Congress 'struck the balance in favor of repose in this area of the law.'" Acknowledging that <u>Arnett</u> is not without critics,[9] the Trustee concludes that "[n]othing in the Code justifies a holding that the [ten]-day grace period is a mere guideline or that it may be trumped by the application of § 547(c)(1)."

---

to a title company. This is not a fact recorded in the Parties' "Joint Statement of Agreed Facts and Exhibits," but neither is it contested by the Trustee in his own pleadings or arguments.

    [9] The critics being those courts that prefer the more flexible approach, as discussed, <u>supra</u>.

## III.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056.  Summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where the moving party does not bear the burden of proof on a particular claim, its burden is to demonstrate a lack of evidence to support at least one essential element of the opposing party's case. Id., at 322-23.  The trustee bears the burden of proving a transfer to be avoidable under § 547(b); the creditor against whom avoidance is sought bears the burden of proving an exception under § 547(c).  11 U.S.C. § 547(g).

### B.   Section 547(b) – Preferential Transfers Generally

There are two purposes served by granting the estate representative the power, pursuant to § 547(b), to avoid preferential transfers.  First, it discourages creditors from "racing to the courthouse to dismember the debtor during the debtor's slide into bankruptcy." H.R. Rept. No. 95-595, at 177-78 (1978); see also, Neponset River Paper Co. v. The Travelers Ins. Co. (In re Neponset), 231 B.R. 829, 832 (1st Cir. B.A.P. 1999).

Second, and predominantly, § 547(b) "facilitate[s] the prime bankruptcy policy of equality of distribution among creditors of the debtor." H.R. Rept. No. 95-595, at 177. The underlying theme, then, is that for a transfer to constitute a preference of one creditor over another, there must be some resulting diminution of the estate such that the pool of unsecured creditors will receive less than they would had the transfer not occurred.[10]

The burden of proof is on the Trustee to demonstrate that the perfection of the Greater Atlantic Mortgage was a preferential transfer under § 547(b). See § 547(g). The threshold requirement of § 547(b) is that the transfer be of an interest of the debtor in the property. As noted by the First Circuit Bankruptcy Appellate Panel:

> The main inquiry in determining whether an alleged preference involved an "interest of the debtor in property" is whether the property transferred would have been part of the bankruptcy estate had it not been transferred before the petition date . . . The transfer must diminish the fund to which other creditors can legally resort for payment.

In re Neponset, 231 B.R. at 833 (internal citations omitted). The five enumerated elements of § 547(b) are neither disputed nor addressed, more than just tangentially, by either party.[11] Therefore, the Court turns first to Greater Atlantic's arguments, which would preclude the Court from finding that the Recording was a transfer which diluted the estate.

---

[10] Some circuits have explicitly held that "a transfer which does not diminish the estate is not avoidable as a preference." See, e.g., Waldschmidt v. Mid-State Homes, Inc. et. al. (In re Pitman), 843 F.2d 235, 241 (6th Cir. 1988); Nicholson v. First Inv. Co. et. al., 705 F.2d 410, 413 (11th Cir. 1983) ("if the transfer did not diminish the bankrupt's estate, then there could be no preference"). The First Circuit Court of Appeals has yet to express a similar holding.

[11] However, § 547(b)(5), which requires that the transfer improve the creditor's position vis-a-vis other creditors, is quite interrelated to the earmarking doctrine.

### C.    The "Earmarking Doctrine"

The phrase "transfer of an interest of the debtor in property" is left undefined by the

Bankruptcy Code.  See 11 U.S.C. § 547(b). The earmarking doctrine is, in some respects,

a judicial response to that void in the context of the payment by one creditor of a debtor's

obligation to another:

> According to the earmarking doctrine, there is no avoidable transfer of the
> debtor's property interest when a new lender and a debtor agree to use
> loaned funds to pay a specified antecedent debt, the agreement's terms are
> actually performed, and the transaction viewed as a whole does not diminish
> the debtor's estate.  No avoidable transfer is made because the loaned funds
> never become part of the debtor's property.  Instead, a new creditor merely
> steps into the shoes of an old creditor.

In re Heitkamp, 137 F.3d at 1088-89.

The court in McCuskey v. Nat'l Bank of Waterloo (In re Bohlen) articulated three

criteria required for the application of the earmarking doctrine:

> (1) the existence of an agreement between the new lender and the debtor
> that the new funds will be used to pay a specified antecedent debt,
> (2) performance of that agreement according to its terms, and
> (3) the transaction viewed as a whole (including the transfer in of the new
> funds and the transfer out to the old creditor) does not result in any
> diminution of the estate.

859 F.2d 561, 566 (8th Cir. 1988).   In the same vein, other courts have labeled the

"cornerstones" of the earmarking doctrine as:

> (1) the absence of control by the debtor over the disposition of the funds, and
> (2) no diminution of the debtor's estate as a result of the transfer.

In re Neponset, 231 B.R. at 834-35 (citations omitted).  An estate is diminished "where the

transfer reduces the pool of funds available to all, so that creditors in the same class do

not receive as great a percentage as the preferred creditor."  Id. at 835.

-12-

The earmarking doctrine requires three specific parties:  the "debtor," an "old creditor," and a "new creditor" who pays the debtor's obligation to the old creditor.[12] Id. at 834.  The earmarking doctrine essentially functions to protect transfers that do not actually compromise the estate.

> [W]here the only change is in the identity of the creditor, without a corresponding depletion of the bankruptcy estate, one policy underlying the power to avoid a preference, [to protect unsecured creditors from diminution of the property of the estate], has not been offended by the transfer.  For instance, if funds from a third party are specifically designated for transfer to a particular creditor and the debtor is either a mere conduit or uninvolved in the transfer, the funds are specifically said to be "earmarked."

Id. (quotations and citations omitted).  The general unsecured creditors are not at risk for receiving less, as a result of the transfer to the new creditor, than they would have received under a chapter 7 bankruptcy had the transfer not been made.    See also, 11 U.S.C. § 547(b)(5).

The refinancing of a secured obligation, such as a mortgage, is a classic opportunity to apply the earmarking doctrine.  See, In re Messamore, 250 B.R. at 917 ("The earmarking doctrine . . . is clearly applicable in a refinancing situation to determine whether the debtor's payment of an existing creditor with funds borrowed from a new creditor

---

[12] Historically, the earmarking doctrine was invoked only where the "new" creditor was actually a guarantor or surety of the debtor.  However, the doctrine has been expanded over time; a new creditor, unrelated to the original transaction, may now be the third party.  See, In re Bohlen, 859 F.2d at 565; In re Messamore, 250 B.R. at 916-17; Adams v. AT & T Universal Card Servs. (In re Adams), 240 B.R. 807, 810 (Bankr. D. Me. 1999).  While in Neponset, the panel noted that some courts refused to extend the doctrine beyond a guarantee obligation, see, 231 B.R. at 835 (citing Geremia v. Fordson Assoc. (In re Int'l Club Enters., Inc.), 109 B.R. 562, 566-67 (Bankr. D. R.I. 1990)), since Neponset the expansion has been nearly universally accepted.  In Adams, the most recent case in the First Circuit to address the issue, the court acknowledged that "the doctrine was expanded [] to encompass any situation where a subsequent loan was made on the condition that it be used to repay an existing loan."  240 B.R. at 810 (emphasis in original).

constitutes a preferential transfer"). When refinancing a mortgage, the debtor enters into a security agreement with a new mortgagee, who agrees to pay off one or more of the debtor's existing mortgagees, generally in exchange for a more favorable interest rate. No diminution of the debtor's estate occurs where the new funds and new debt are equal to the preexisting debt, so the amount available for general creditors thus remains the same as it was before the payment was made.[13]

Here, however, the Trustee complains that the *perfection* of the Greater Atlantic Mortgage was separate and apart from payment of the underlying obligation, and that it was not timely. Accordingly, the Court must determine whether the earmarking doctrine may protect the transfer of a security interest otherwise unprotected under § 547(e)(2((A). This is an issue of first impression within the First Circuit, and one over which other circuits are divided. There are two competing views. One camp interprets the earmarking doctrine

---

[13] An additional policy justification for the earmarking doctrine has been advanced where the new creditor is also a guarantor of the debt to the old:

> [The earmarking doctrine] was needed to avoid unfairness and inequity to the new creditor. If his direct payment to the old creditor was voided, and the money was ordered placed in the bankruptcy estate, the new creditor, as guarantor, would have to pay a second time.

In re Bohlen, 859 F.2d at 565; see also, In re Adams, 240 B.R. at 809 ("The doctrine safeguards the guarantor from double jeopardy: the peril of remaining beholden to the debtor's old creditor (who has been divested of its pay-off by preference avoidance) while at the same time seeing the money meant and spent to satisfy the original debt returned to the bankruptcy estate").

Greater Atlantic asserts that it too is in danger of paying twice. Here, should the Trustee succeed on his preference claim, he seeks a monetary judgment to be paid to the estate. Greater Atlantic has already paid $96,313 once, upon disbursing that sum to Washington Mutual. It complains that it now faces the prospect of paying the same amount to the estate. Of course, in that event, Greater Atlantic will still have its mortgage intact. "The equities in favor of a guarantor or surety, the risk of his having to pay twice if the first payment is held to be a voidable preference, are not present where the new lender is not a guarantor himself." In re Bohlen, 859 F.2d at 566. This court agrees and finds Greater Atlantic's fear of losing two payments without merit.

-14-

narrowly and refuses to extend it to the perfection of security interests. Id. ("Although the debtor's transfer to [old creditor] arose in the context of a refinancing arrangement, [the perfection of the new security interest] did not involve the payment of funds by a third party, or, indeed, the payment of borrowed funds at all.  For this reason, the earmarking doctrine has no logical relevance to such transfer"); see also, Schmiel v. Interstate Fin. Corp. (In re Schmiel), 319 B.R. 520 (Bankr. E.D. Mich. 2005); Moeri v. Kenosha City Credit Union et. al. (In re Moeri), 300 B.R. 326 (Bankr. E.D. Wisc. 2003); In re Shreves, 272 B.R. at 625.

The other camp extends the earmarking doctrine to the perfection of a security interest where the transaction involves the substitution of one secured loan for another of the same value, secured by the same collateral.  See, In re Heitkamp, 137 F.3d at 1089 ("[T]he doctrine applies when a security interest is given for funds used to pay secured debts, but not when a security interest is given for funds used to pay an unsecured debt"); see also, Rounds v. First Sec. State Bank et. al., (In re Rounds), 328 B.R. 132 (Bankr. N.D. Iowa 2005); Ward v. Sterling Nat'l Bank (In re Ward), 230 B.R. 115 (B.A.P. 8th Cir. 1999). These courts are willing to apply the earmarking doctrine even where there is a substantial delay in the perfection of the new security interest.  See, e.g., In re Heitkamp, 137 F.3d at 1088 (a lapse of several months); In re Ward, 230 B.R. at 116-17 (at least a 39-day lapse); In re Rounds, 328 B.R. at 134 (eleven-day lapse).

The disagreement stems from divergent views on whether a refinancing transaction is comprised of two transfers, see, In re Messamore, 250 B.R. at 917 ("The transfer to [a new creditor] that occur[s] upon perfection of its lien [i]s *separate and distinct* from the transfer that occur[s] when [the original creditor] [i]s paid with borrowed funds") (emphasis

supplied), or whether all of the transfers are lumped together and treated as one cohesive transaction. See, In re Heitkamp, 137 F.3d at 1088 (where one secured creditor replaces another, "[t]he [Debtor's] assets and net obligations remain[] the same . . . there [i]s no transfer of the [Debtor's] property interest avoidable under § 547(b)").

The Messamore view is that a refinancing transaction involves first, the transfer of funds to the old creditor, and second, the transfer of a security interest from the debtor to the creditor which, if belated, is effective only upon perfection. See, 250 B.R. at 917; see also, § 547(e)(2)(B). Cases that follow Messamore interpret the earmarking doctrine in light of § 547(e). It is their position that:

> [I]f a refinancing lender can perfect its security interest whenever it chooses to do so, then § 547(e) would be stripped of its meaning. Section 547(e) protects mortgagees for ten days after the transfer of funds. Once the ten-day window closes, a mortgagee is not protected from preference litigation.

Davis v. Homecomings Fin. Network, Inc. et. al. (In re Davis), 319 B.R. 532, 535 (Bankr. E.D. Mich. 2005).

In this light, the Messamore camp argues that the new creditor who can not satisfy § 547(e)(2)(A) is merely a general unsecured creditor between the first and second transfers, and that the second transfer, transferring the security interest from the debtor to the new creditor, is unrelated to how the debt was originally incurred. In re Messamore, 250 B.R. at 918. Accordingly, the Messamore line of decisions views this second transfer as diminishing the estate:

> It goes without saying, moreover, that the debtor's transfer of a property interest – the grant of a security interest – to the new creditor resulted in a diminution of property of the estate, since a transfer "by way of payment on or security for" an antecedent debt diminishes the assets available for other creditors.

-16-

In re Messamore, 250 B.R. at 919 (citations omitted).  These decisions fault Heitkamp for "fail[ing] to distinguish between the transfer of borrowed funds to the original creditor and the subsequent transfer that occurred when the new creditor belatedly perfected its security interest in the debtor's property." In re Schmiel, 319 B.R. at 528, (quoting In re Messamore, 250 B.R. at 918).

It is true that Heitkamp does not greatly elaborate on its conclusion that the earmarking doctrine applies to a loan refinancing.  It merely justifies its position by noting:

> [R]eplacing one creditor with another of equal priority does not diminish the estate and thus no voidable [transfer] results.  Thus, the doctrine applies when a security interest is given for funds used to pay secured debts, but not when a security interest is given for funds used to pay an unsecured debt.

In re Heitkamp, 137 F.3d at 1089 (internal quotations and citations omitted).  But cases since Heitkamp have better explained why a loan refinancing transaction should be viewed as a singular one.

In Biggers v. Cmty. Credit Co. (In re Biggers), the issue was whether an untimely perfected non-purchase money security interest in an automobile, given to refinance a prior automobile loan, was a preferential transfer under § 547(b).  249 B.R. 873, 875 (Bankr. M.D. Tenn. 2000).  Though not decided under the earmarking doctrine, the court focused on whether the estate was diminished by virtue of the transfer. The court acknowledged that a refinancing transaction involves several different "transfers":  the execution of a new note by the debtor, the disbursement of funds made to the old creditor, and the perfection of the new creditor's security interest.  Id.  In holding that a refinancing transaction was better treated as one whole transaction, as opposed to several "separate and distinct" transfers, the Biggers court noted:

-17-

Looking only at the "trees" and parsing each component of the refinancing, it is easy to conclude that the transfer allowed [the new creditor] to receive more than it would have in a Chapter 7 case. [The new creditor] released the original [] lien on the pickup. [The new creditor] took a new note and received a new security interest.  But for the new security interest, [the new creditor] would have been an unsecured creditor in a case under Chapter 7.  Viewed in this narrow light, perfection of the new lien enabled [the new creditor] to realize a greater share of the estate.  *However, in transactions that involve collateral substitution or renewal of a lien or security interest many courts have measured the transaction as a whole to determine whether the estate was diminished.*

Id. at 877 (emphasis supplied).  Accordingly, the court held that no voidable preference under § 547(b) had occurred. Id. at 879;  see also, In re Ward, 230 B.R. at 120 ("[P]reference attacks on transfers to new creditors in earmarking situations must be analyzed in terms of th[e] net result rule [i.e. whether the transfer diminished the net assets and obligations of the estate] to determine if there has been a transfer of property of the debtor").

Even the court in Davis, purporting to align itself, as does Biggers, with the Messamore camp, appears to be, in actuality, more in line with Heitkamp and its progeny. See, In re Davis, 319 B.R. at 536.    Davis was also a case where the recording of a mortgage used to pay an earlier mortgage lien was delayed. The Davis court first states that the transfer of the new mortgagee's security interest was not subject to protection under the earmarking doctrine.  But the court then characterized the mortgage refinancing in that case as a singular transaction, commenting:

In the instant case, as in  Biggers, the Debtor and his non-debtor spouse simply refinanced their home with the Defendants. The Defendants paid off the existing mortgage and recorded its [sic] interest in the property, albeit outside the ten-day period provided for in § 547(e).  The Debtor exchanged one secured debt for another.  The estate was not diminished.

-18-

Id.

Here, as in Davis and Biggers, the Sisters "simply refinanced their home" with Greater Atlantic. The Note and Mortgage were executed by the Sisters on June 22, 2004, prior to the 90-day preference period.  The funds were disbursed to Washington Mutual on the First of July and Greater Atlantic recorded its Mortgage on July 15, 2004, twenty-three days after the execution of the Greater Atlantic Mortgage and fourteen days after the funds were disbursed to Washington Mutual.  Greater Atlantic can not avail itself of § 547(e)(2)(A) because the Recording was beyond the ten-day safe harbor of that section. But it is beyond dispute that the payment of the funds to Washington Mutual was part and parcel of a singular transaction wherein a new mortgage was granted by the Sisters to Greater Atlantic for the purpose of repaying the old mortgage held by Washington Mutual. And, when the "dust settled," those holding general unsecured claims against the Debtor were no better and no worse off.

The Bohlen earmarking criteria are all here present, as are the "cornerstones" of the doctrine.  Moreover, because Washington Mutual's mortgage was not discharged as of record until August 3, 2004, over two weeks  *after* the Greater Atlantic Mortgage was recorded, no creditor could have been prejudiced by the absence of the Greater Atlantic Mortgage on the public record.  Under the circumstances, it simply seems disingenuous to treat the Debtor's refinancing of her home as anything other than one cohesive transaction.[14]

———————————————

[14] The Court notes that under the 2005 amendments to the Bankruptcy Code, the § 547(e)(2)(A) grace period was extended to thirty days.  See, 11 U.S.C. § 547(e)(2)(A) (2005). Section 403 of the corresponding "Bankruptcy Abuse Prevention and Consumer Protection Act of

Caution should be applied in interpreting this Court's holding.  It is based on the earmarking doctrine, the timing of the discharge of Washington Mutual's mortgage and the lack of any material issue of fact as to the intention of the parties.  This Court does not today hold that the substantially contemporaneous exception under § 547(c)(1) protects the transfer of a security interest otherwise unprotected under § 547(e)(2)(A).  Nor does this Court hold that the earmarking doctrine would apply to protect a transaction where, for any period of time, no encumbrance appeared as of record.  This Court further does not hold that the earmarking doctrine necessarily applies to a refinancing transaction where the length of time between the transfer of value to the old creditor and the perfection of the new security interest is so extensive that a material issue of fact has arisen relative to the parties' intention.  Rather, this Court holds that in the context of a refinancing transaction, where the intention of the parties is beyond any genuine issue of material fact and creditors are not prejudiced by an absence on record of the original encumbrance, the earmarking doctrine precludes the avoidance, under § 547(b), of one security interest granted to replace another.

---

2005" ("BAPCPA") reads, in its entirety:

### § 403 Protection of Refinance of Security Interest

Subparagraphs (A), (B), and (C) of section 547(e)(2) of title 11, United States Code, are each amended by striking "10" each place it appears and inserting "30."

BAPCPA, Pub. L. 109-8, Title IV, § 403, 119 Stat. 23 (2005).   While this amendment is not retroactive and does not govern the case at bar, it lends credence to the Court's finding that Greater Atlantic's fourteen (or twenty-three) day delay in recording the Mortgage was not unreasonable.

IV.    CONCLUSION

For all the foregoing reasons, the "Motion of Defendant Greater Atlantic Mortgage Corporation for Summary Judgment" is GRANTED; the "Plaintiff's Motion for Summary Judgment" is DENIED.

Separate orders and a judgment in conformity with this Memorandum of Decision shall enter herewith.


DATED:  December 15, 2005          By the Court,


_____
Henry J. Boroff
United States Bankruptcy Judge

# United States Bankruptcy Court

# District of Massachusetts

|  |  |
|---|---|
| In re:<br><br>CHRISTINE H. LAZARUS,<br><br>Debtor. | )<br>)<br>)<br>)<br>)     Chapter 7<br>)     Case No. 04-45477-HJB<br>) |
| JOSEPH B. COLLINS,<br>Chapter 7 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>GREATER ATLANTIC MORTGAGE<br>CORPORATION and<br>MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)     Adversary Proceeding<br>)     No. 05-04007<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER

For reasons stated in this Court's Memorandum of Decision of even date, the "Motion of

Defendant Greater Atlantic Mortgage Corporation for Summary Judgment" is GRANTED.

DATED:  December 15, 2005                    By the Court,

                                                                        Henry J. Boroff
                                                                        United States Bankruptcy Judge

# United States Bankruptcy Court

## District of Massachusetts

|  |  |
|---|---|
| In re:<br><br>CHRISTINE H. LAZARUS,<br><br>Debtor. | Chapter 7<br>Case No. 04-45477-HJB |
| JOSEPH B. COLLINS,<br>Chapter 7 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>GREATER ATLANTIC MORTGAGE<br>CORPORATION and<br>MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS, INC.,<br><br>Defendants. | Adversary Proceeding<br>No. 05-04007 |

## ORDER

For reasons stated in this Court's Memorandum of Decision of even date, the "Plaintiff's

Motion for Summary Judgment" is DENIED.

DATED:  December 15, 2005                    By the Court,


                                             _____
                                             Henry J. Boroff
                                             United States Bankruptcy Judge

# United States Bankruptcy Court

## District of Massachusetts

|  |  |
|---|---|
| In re:<br><br>CHRISTINE H. LAZARUS,<br><br>      Debtor. | )<br>)<br>)<br>)<br>)   Chapter 7<br>)   Case No. 04-45477-HJB<br>) |
| JOSEPH B. COLLINS,<br>   Chapter 7 Trustee,<br><br>      Plaintiff,<br><br>      v.<br><br>GREATER ATLANTIC MORTGAGE<br>   CORPORATION and<br>MORTGAGE ELECTRONIC<br>   REGISTRATION SYSTEMS, INC.,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   Adversary Proceeding<br>)   No. 05-04007<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### JUDGMENT

The Court having allowed the "Motion of Defendant Greater Atlantic Mortgage Corporation for Summary Judgment," for reasons stated in this Court's Memorandum of Decision of even date, JUDGMENT IS HEREBY GRANTED TO THE DEFENDANT.

DATED:  December 15, 2005

By the Court,

Henry J. Boroff
United States Bankruptcy Judge